**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Benito Joya, | ) | No. CV 05-2269-PHX-NVW |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | [Not for Publication] |
| Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) ) | |

The Court has before it Plaintiff's Motion for Summary Judgment, Doc. # 9, which includes Plaintiff's Statement of Facts; Defendant's Cross-Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment, Doc. # 11; Defendant's Statement of Facts, Doc. # 12; and Plaintiff's Response and Reply to Defendant's Cross-Motion for Summary Judgment, Doc. # 14.

Plaintiff Benito Joya ("Joya") brought this action against the Commissioner of Social Security ("Commissioner"), alleging that his application for Social Security Income was wrongly denied. Joya now moves for reversal of the decision below and for a remand for a new hearing or an award of benefits. The Commissioner cross-moves for summary judgment.

**I.    Statement of the Case**

On May 1, 2001, Joya filed an application for Supplemental Security Income ("SSI") payments, claiming disability due to chronic lower back pain, status post annular tear with

protruded discs at L5-S1, edematous right S1 nerve root, and annular tear and herniated discs at L4-5with moderately severe impingement on the spinal canal and right neural foramen. Defendant Statement of Facts ("DSOF") at ¶ 1. Joya alleged an onset-of-disability date of January 1, 1990, and was forty-nine years old at the time of the June 22, 2004 hearing. DSOF at ¶ 15.

In 2001, Joya underwent back surgery to fuse his spine in an attempt to alleviate his back pain. Plaintiff Statement of Facts ("PSOF") at ¶ 13. The surgery was unsuccessful. Joya's doctors also prescribed various pain medications. In May 2003, Dr. Corbett, Joya's treating physician, completed a form for the Arizona Department of Economic Security in which Dr. Corbett opined that Joya's back condition rendered him unable to work. PSOF at ¶ 18. Dr. Angelo L. Chirban, a doctor at the Phoenix Pain Management Center, began treating Joya for his back pain in 2003. PSOF at ¶ 23. In October 2004, another specialist from the Phoenix Pain Management Center evaluated Joya, concluding that Joya's pain rendered him unable to work. PSOF at ¶ 26.

An initial hearing before an ALJ was held on January 21, 2003. The ALJ issued an unfavorable decision on February 21, 2003. The Appeals Council granted Joya's request to review the decision and remanded the case to the ALJ for a new hearing, directing the ALJ to (1) evaluate the medical opinions and residual functional capacity findings, (2) evaluate Joya's credibility, and (3) allow for a supplemental hearing to address all of the record evidence. PSOF at ¶ 3. At the second hearing on June 22, 2004, both Joya and a vocational expert testified. According to the testimony of the vocational expert, if Joya actually experienced the pain he described, he would be unable to work. Tr. at 82.

On July 21, 2004, the ALJ issued a second unfavorable decision, concluding that Joya could still work as an assembly worker and quality control inspector. DSOF at ¶ 15. The ALJ found Joya's pain testimony not credible. The Appeals Council modified the ALJ's decision but declined Joya's request to review the ALJ's decision, making the modified ALJ's decision the final decision of the Commissioner. PSOF at ¶ 10. Joya appeals the modified ALJ decision.

1   While the appeal was pending, Joya filed a new application for SSI benefits. He was found disabled as of March 21, 2005. PSOF at ¶ 4. Joya is now seeking SSI benefits from his May 1, 2001 filing date to March 21, 2005, the date he was deemed disabled.

## II.     Standard of Review

The court reviews only those issues raised by the party challenging the Secretary's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001); *Bergfield v. Barnhart*, 361 F. Supp. 2d 1102, 1110 (D. Ariz. 2005) ("A reviewing federal court will only address the issues raised by the claimant in his appeal from the ALJ's decision."). In its review, the court "may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citations omitted); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995) (citations omitted). Such evidence is "more than a scintilla" but "less than a preponderance." *Smolen*, 80 F.3d at 1279 (citations omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

In this case, the Appeals Council modified the ALJ's decision and added new medical evidence to the record. In such a case, the court reviews both the Appeals Council's reasoning and the ALJ's decision. *See Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); *see also Bates v. Sullivan*, 894 F.2d 1059, 1063-64 (9th Cir. 1990) (concluding that the Appeals Council properly rejected the claimant's additional medical evidence and therefore properly declined to review the ALJ's decision). The ALJ's decision, as modified by the Appeals Council, is the final decision of the Secretary. *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985) ("The Secretary is empowered to affirm, modify or reverse the ALJ's decision. Such a decision then becomes final and is binding upon the parties unless review is sought in district court.").

### III. Legal Standard

Part 404.1520 of the Code of Federal Regulations describes the five-step sequential evaluation process used in determining whether a claimant is disabled. The five steps are (1) whether the claimant is currently working, (2) whether the alleged impairment is severe, (3) whether the alleged impairment meets the definition of an "impairment" as set forth in Appendix 1 of Subpart P of the regulations, (4) whether the claimant can perform work performed in the past, and (5) whether the claimant has the ability to perform other work. 20 C.F.R. § 404.1520(a)(4)(i-v). The questions are addressed in order; certain responses to these questions will lead to automatic eligibility or ineligibility. *See id.* The ALJ in Joya's case made his decision at step five of the analysis.

Although the claimant bears the burden of proving disability during the first four steps of the sequential evaluation, "the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citations omitted); *see also Smolen*, 80 F.3d at 1289 ("A claimant establishes a prima facie case of disability by showing that her impairment prevents her from performing her previous occupation.") (citations omitted). Where applicable, the Medical-Vocational Guidelines can provide evidence of other jobs so as to allow the Commissioner to carry that burden. *Heckler v. Campbell*, 461 U.S. 458, 468 (1983).

### IV. Analysis

Joya advances three arguments why the ALJ erred as a matter of law: (1) the ALJ improperly discredited Joya's testimony; (2) the ALJ improperly disregarded Joya's treating physician's opinion, and (3) the ALJ failed to utilize a medical expert's testimony when determining whether Joya's medical conditions were equivalent to any of the Social Security Regulation's Listed Impairments.

#### A. Credibility Determination

"The ALJ is responsible for determining credibility and resolving conflicts in medical testimony and ambiguities." *Lewis v. Apfel,* 236 F.3d 503, 509 (9th Cir. 2001). In weighing a claimant's credibility, the ALJ may consider various factors, including the claimant's daily

- 4 -

1  activities, the claimant's reputation for truthfulness, inconsistencies either in her testimony
2  or between her testimony and her conduct, her work record, and testimony from physicians
3  and third parties concerning the nature, severity, and effect of the symptoms of which he
4  complains. *Smolen*, 80 F.3d at 1284.  If the ALJ finds particular testimony of the claimant
5  not credible, he must provide clear and convincing reasons for rejecting it. *Vertigan v.*
6  *Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[A]bsent affirmative evidence of malingering,
7  an ALJ cannot reject a claimant's testimony without giving clear and convincing reasons.")
8  (citations omitted).  The ALJ also "must specifically identify the testimony she or he finds
9  not to be credible and must explain what evidence undermines the testimony." *Holohan v.*
10 *Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citations omitted).  "General findings are
11 insufficient; rather, the ALJ must identify what testimony is not credible and what evidence
12 undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).
13 "The evidence upon which the ALJ relies must be substantial." *Id.* (citations omitted).
14       The ALJ did not find credible Joya's testimony regarding his pain and functional
15 limitations, and the Appeals Council did not find credible Joya's claim that he is illiterate.
16 These arguments will be addressed in turn.

17       **1.    Joya's Testimony Regarding His Pain and Functional Limitations**
18       The ALJ determined that Joya's testimony regarding his pain and functional
19 limitations was not credible because (1) contrary to Joya's allegations, his doctor's treating
20 notes suggest that Joya's pain had stabilized at a lower level, and (2) Joya had calloused
21 hands, demonstrating that Joya had been more physically active than his testimony
22 supported. Tr. at 53.

23       **a.    Treatment Notes**
24       The ALJ concluded that Joya's recent treatment notes demonstrated that Joya was
25 exaggerating his pain.  Specifically, the ALJ stated: "The claimant's allegations that he
26 continues to experience high levels of pain, even as high as 10 on a scale of 1 to 10, despite
27 taking narcotic pain medications, is inconsistent with more recent medical records from his
28

- 5 -

1 pain management specialist, which demonstrate a stabilization of pain (Exhibit 15F)." Tr. at 53.

The record simply does not support the ALJ's claim that Joya "alleg[ed] that he continues to experience high levels of pain." The court has reviewed the transcript from the administrative hearing, and it appears that Joya made no such statement. In fact, the only time that Joya claimed to have experienced a pain level of "ten"–as far as the court has been able to discern–was during his initial visit at the Phoenix Pain Management Center on February 2, 2004. Tr. at 484. Meanwhile, Joya's doctors stated that Joya's pain level stabilized between February 2004 and June 2004. There is no inconsistency between these accounts. If Joya had testified that he continued to experience a pain level of "ten" after June 2004, such a statement would arguably be inconsistent with his doctors' statements. But, as stated above, Joya offered no such testimony at the hearing.

### b. **Calloused Hands**

The ALJ also relied on the fact that a medical professional had observed Joya as having a calloused hand. The ALJ determined that the presence of callouses demonstrated that Joya had engaged in some form of repetitive physical activity, and therefore his testimony about his functional limitations was not credible. Tr. at 53.

This reasoning is unpersuasive. Some courts have flatly concluded that the presence or absence of callouses has no impeachment value in a disability case. *See, e.g., Schmidt v. Bowen*, 1987 U.S. Dist. LEXIS 9974, *13-16 (E.D. Pa. 1987) ("the ALJ exceeded the bounds of a factfinder. He did not explain how these alleged calloused hands contradicted the plaintiff's claim of disability. The ALJ does not state this 'condition' undermines the plaintiff complaints, such as the inability to stand or sit for prolonged periods of time, which might prevent plaintiff from working. He did not explain how callouses necessarily showed that the plaintiff could perform employment activities"). Here, the import of Joya's callouses is ambiguous. They might be relevant and they might not be relevant. The ALJ only stated that Joya's calloused hand demonstrated that Joya had engaged in repetitive physical activity–proof, presumably, that Joya was not as disabled as he claimed to be. However,

- 6 -

there may be a perfectly reasonable explanation for the presence of the callouses that is consistent with Joya's testimony. Perhaps the callouses predate Joya's disabling back injury. Perhaps Joya was able to continue engaging in activities involving his hands even after he sustained his back injury. The point is that the ALJ did not explore these possible alternative explanations.[1] Thus, while the callouses may tend to impeach Joya's testimony, they do not provide the sort of clear and convincing evidence necessary for an ALJ to disregard a claimant's testimony.

### c.     Clear and Convincing Evidence

In sum, the ALJ provided two reasons for determining that Joya's testimony was not credible: first, alleged inconsistencies between Joya's testimony and medical records concerning his pain level; and second, the fact that Joya had a calloused hand. Yet, as discussed above, the first explanation is simply unsupported by the record. Accordingly, the ALJ's adverse credibility determination rests solely on the presence of callouses. This single, ambiguous fact is insufficient under *Vertigan's* clear and convincing standard. The ALJ therefore improperly discredited Joya's testimony about his pain and functional limitations.

### 2.     Literacy Testimony

At the June 22, 2004 hearing, Joya testified that he was illiterate. Tr. at 66-67. The ALJ concluded that Joya was illiterate and had a marginal education. Tr. at 57. The ALJ then concluded that Joya was not disabled pursuant to 20 C.F.R. Part 404, Subpt. P, App. 2, Rule 201.18, which provides that a younger, literate, unskilled individual is not disabled. The ALJ's decision was internally inconsistent because he concluded that Joya was illiterate and then applied the Medical-Vocational Rule for literate individuals.

Joya pointed out this error to the Appeals Council, which concluded that the ALJ had applied the wrong definition of illiterate but had applied the correct Medical-Vocational

---

[1] Other ALJs have questioned the claimant about the presence of callouses at the hearing. *See e.g., Suratt v. Secretary of HHS*, 786 F.2d 1166, *7 (6th Cir. 1986) (the ALJ provided the claimant with an opportunity to explain why he had callouses on his hands); *Givens v. Chater*, 1997 U.S. Dist. LEXIS 3847, *27-8 (E.D. N.C. 1997) (same).

- 7 -

1  Rule. The Appeals Council stated that 20 CFR 416.964(b)(1) provides that an individual is
2  illiterate "if the person cannot read or write a simple message such as instructions or
3  inventory lists even though the person can sign his or her name." The Appeals Council
4  concluded that evidence in the record demonstrated that, under this definition, Joya was
5  literate.

6  As discussed above, to discredit a claimant's testimony, an ALJ must provide clear and
7  convincing reasons. In this case, the Appeals Council modified the ALJ's reasoning but did
8  not alter the ALJ's ultimate conclusion. The Appeals Council's modifications therefore
9  represent the Commissioner's final decision, and the Appeals Council needed to provide clear
10 and convincing reasons supporting its conclusion to discredit Joya's testimony regarding his
11 literacy.

12 To satisfy this burden, the Appeals Council cited two pieces of evidence. First, the
13 Appeals Council cited Joya's initial application for SSI, in which Joya checked a box stating
14 that he could read English and could write more than his name in English. Tr. at 160. This
15 is probative evidence demonstrating that Joya can in fact read and write simple statements.
16 Second, the Appeals Council cited a form filled out by an employee of the Social Security
17 Administration in which an interviewer checked a box indicating that the interviewer did not
18 witness Joya having any difficulty reading or writing. This evidence also supports the
19 Appeals Council's determination that Joya is literate.

20 These two pieces of evidence undermine Joya's testimony that he was illiterate. The
21 Appeals Council therefore provided clear and convincing reasons supporting its decision to
22 discredit Joya's literacy testimony. Because Joya is literate, the ALJ did not err on that
23 ground in applying Rule 201.18.[2]

---

26 [2]Joya also argues that the ALJ relied on an inaccurate hypothetical because the ALJ
27 stated that Joya had marginal reading and writing skills. Because the Appeals Council
   concluded that Joya was literate, the ALJ did not err by posing a hypothetical to the
28 vocational expert that accurately reflected Joya's reading and writing skills.

- 8 -

However, Rule 201.18 is no longer applicable on a different ground. In applying Rule 201.18, the ALJ relied on the vocational expert's testimony. Tr. at 56 ("Based upon a thorough review of the entire record, in conjunction with the testimony of the vocational expert, the undersigned concludes that . . . he [the claimant] is capable of making a successful adjustment to work that exists in significant numbers in the economy. A finding of not disabled is therefore reached within the framework of Medical-Vocational Rule 201.18."). Specifically, the ALJ relied on the portions of the vocational expert's testimony in which the ALJ asked hypothetical questions to the vocational expert that did not fully reflect Joya's testimony regarding his pain and functional limitations. Because the ALJ improperly discredited this testimony of Joya, and the vocational expert testified that Joya would be disabled if all of his testimony about his pain were true, the vocational expert's testimony no longer supports the ALJ's application of Rule 201.18.

### B.  Treating-Physician Rule

There are three types of physicians: (1) treating physicians, who treat the plaintiff; (2) examining physicians, who examine but do not treat the plaintiff, and (3) nonexamining physicians, who neither examine nor treat the plaintiff. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Case law establishes:

> As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. We have also held that "clear and convincing" reasons are required to reject the treating doctor's ultimate conclusions. Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing.

*Id.* Treating physicians' opinions receive special weight "[b]ecause treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinion of other physicians." *Smolen*, 80 F.3d at 1285.

In May 2003, Dr. Corbett, Joya's treating physician, completed a form for the Arizona Department of Economic Security in which he stated that Joya's back condition rendered him

- 9 -

completely unable to work. Tr. at 500. In October 2004, following the ALJ's decision, a specialist at the Phoenix Pain Management Center filled out a Physical Capacities Evaluation and concluded that Joya's pain was of such a level that he was unable to work. Tr. at 535-36. Finally, on March 6, 2002, Dr. McPhee, an examining physician retained by the Social Security Administration, concluded that Joya was not disabled and could perform sedentary work.

Because Dr. Corbett's medical opinion was contradicted by that of Dr. McPhee, the ALJ needed to provide specific and legitimate reasons supported by substantial evidence for disregarding Dr. Corbett's medical opinion.[3] However, no such reasons were ever provided. Joya submitted Dr. Corbett's opinion to the Appeals Council, and the Appeals Council added Dr. Corbett's opinion to the record, but the Appeals Council did not mention–let alone provide specific and legitimate reasons for discarding–Dr. Corbett's opinion in its letter declining to review the ALJ's decision. Tr. at 25-29.

Defendant contends that under *Magallanes v. Bowen*, 881 F.2d 747 (9th Cir. 1989), it is unnecessary for the ALJ or Appeals Council to provide "magic words" rejecting the treating physician's opinion. Yet Defendant's reliance on *Magallanes* is misplaced. There, the ALJ "summarized the facts and conflicting clinical evidence in detailed and thorough fashion, stating his interpretation and making findings." *Id.* at 755. Here, the Appeals Council does not even mention Dr. Corbett's opinion or acknowledge the presence of conflicting medical opinions in the record, one of which was from Joya's treating physician. Providing no explanation (as the Appeals Council did here) is not tantamount to providing a detailed analysis that clearly, if not explicitly, rejects the treating physician's opinion (as in *Magallanes*). The Appeals Council therefore improperly disregarded Dr. Corbett's medical opinion.

---

[3] It is unclear whether the specialist at the Phoenix Pain Management Center, who filled out the evaluation in October 2004, was one of Joya's treating physicians. As a result, that opinion will not receive the special weight normally accorded to the opinion of a treating physician.

- 10 -

### C. Medical-Expert Testimony

Joya also argues that the ALJ erred at stage three of the sequential analysis, by failing to receive expert testimony on whether Joya's alleged impairments met or equaled any of the listed impairments in the regulations. However, the court need not reach this issue because Joya is entitled to an award of benefits on the grounds discussed above.

## V. Award of Benefits

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citation omitted). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). However, "[i]n cases where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony." *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1400 (9th Cir. 1988).

Here, the ALJ failed to provide clear and convincing reasons for discrediting Joya's testimony regarding the severity of his pain and his functional limitations. Under *Varney*, Joya's testimony is therefore credited as true. Because the vocational expert stated that if Joya's testimony were true, he would be disabled, a remand would be inappropriate under *Varney*.

An award of benefits is therefore proper in this case. The fact that the Appeals Council improperly disregarding Joya's treating physician's opinion without providing specific and legitimate reasons further supports an award of benefits.

IT IS THEREFORE ordered that Plaintiff's Motion for Summary Judgment, Doc. # 9, is granted.

IT IS FURTHER ORDERED that Defendant's Cross-Motion for Summary Judgment, Doc. # 11, is denied.

IT IS FURTHER ORDERED that this action is remanded to the Commissioner of Social Security for an award of benefits.

DATED this 3rd day of April 2006.

_____
Neil V. Wake
United States District Judge